**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ALBERTO MATTA,

                    Movant,

     - against -

UNITED STATES OF AMERICA and
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,

                    Respondents.

**DECLARATION OF ALBERTO MATTA IN SUPPORT OF APPLICATION FOR RETURN OF SEIZED PROPERTY**

I, ALBERTO MATTA, declare as follows:

1. I am the movant in the above captioned action, and I am familiar with the facts and circumstances set forth herein.

2. I am 55 years old, and I am an Italian citizen. I am the founder, Chairman and majority shareholder of Optimum Asset Management, S.A. ("Optimum"), a European Commission regulated real estate private equity firm that invests in projects in the United States and Europe on behalf of primary institutional investors. Optimum has offices in the United States and in Europe. I have over 28 years of experience in finance and have been employed by major financial institutions in the United States, the United Kingdom and elsewhere in Europe.

3. Optimum is subject to the regulatory supervision of the Luxembourg *Commission de Surveillance du Secteur Financier* (CSSF), the local arm of the European Central Bank, and to assume my current position as a senior officer and director of Optimum as well as in the banking sector, I was required to provide a detailed sworn statement attesting to my background and character. I am also required to maintain personal and professional

conduct consistent with being fit and proper to undertake responsibility to manage funds belonging to others. During my professional career, I have never previously had any interaction with the criminal justice system in any country.

4. On Saturday, October 7, 2023, I traveled to New York City from Madrid, Spain. The purpose of my travel was Optimum business.

5. Upon my arrival at John F. Kennedy International Airport, I waited in line to have my passport stamped by a Customs and Border Protection agent ("CBP Agent 1"). When I approached CBP Agent 1, I gave her my passport. CBP Agent 1 then brought me to a separate room to speak to another agent who wore a "customs" badge ("CBP Agent 2"). CBP Agent 2 stood at a booth, and I stood in front of him.

6. CBP Agent 2 asked numerous questions that he appeared to read from a lengthy questionnaire. Although some questions were repeated, each of them appeared to be standard. For example, CBP Agent 2 asked me about my city of departure, my itinerary, and the purpose of my travels. I responded that I came from Madrid, Spain, that I previously traveled to Munich, and that the purpose of my travels was business.

7. A number of times throughout the 40-minute duration of CBP Agent 2's questioning, I inquired about the purpose of the questions. CBP Agent 2 responded repeatedly that he did not know the purpose and that he was following instructions. Not once throughout the 40 minutes of questioning did CBP Agent 2 indicate that he suspected me of any wrongdoing or what that might be. I truthfully answered all the questions that CBP agent 2 asked of me to the best of my ability.

8. After CBP Agent 2 completed his questioning, he asked me to move to a separate area of the same room with a large table and many chairs, each of which had a chain that would

appear to accommodate ankle cuffs.  When I sat at the table, CBP Agent 2 asked me to produce all of the devices in my present possession and place them on the table.  At that time, I possessed one Samsung Galaxy cellphone (the "cellphone") and one Microsoft laptop computer (the "laptop").  After I placed these electronic devices on the table, CBP Agent 2 began to physically inspect and photograph them.  CBP Agent 2 asked me more than once for the brand and model of my cellphone, and I answered.  CBP Agent 2 then asked if I had any other device to which I responded that I did not. He then searched my bags and did not find any other device.

9. CBP Agent 2 then asked me to provide the password for my cellphone, and I declined, and told him that I wanted to speak to a lawyer before doing so.  CBP Agent 2 then showed me a pre-printed piece of a paper that he claimed reflected CBP Agents' rights to inspect electronic devices.  Nevertheless, I declined to provide the passcode because I was concerned about revealing sensitive business and personal information, including communications and documents that are protected by attorney-client privilege and work-product doctrine.  CBP Agent 2 thereafter continued to ask me to unlock my phone so that he could review its contents.

10. A third CBP Agent ("CBP Agent 3") was asked by CBP Agent 2 to approach the desk and I was asked again to unlock my cellphone so that CBP Agent 3 could help CBP Agent 2 to identify and record the International Mobile Equipment Identity ("IMEI") number.  I used my fingerprint to open my device and handed over the device.  CBP Agent 2 and CBP Agent 3 then operated the phone and recorded the IMEI number.  I asked CBP Agent 2 again why I was being questioned and asked to allow CBP to review the contents of my cellphone.  CBP Agent 2 again responded that he did not know.

3

11. Thereafter, a Homeland Security Investigations ("HSI") agent, Thomas Wilbert, entered the room and sat down in front of me. SA Wilbert advised that my cellphone and laptop would be detained, and he asked me for the address to which he could deliver the devices. I advised him to deliver the devices to my office in Luxembourg. I asked SA Wilbert multiple times why my devices were being detained, and he responded that he could not provide any information. SA Wilbert gave me a receipt for the cellphone and laptop and told me that I was free to leave. I have attached the receipt hereto as Exhibit A.

12. I was detained for approximately between one hour and 20 minutes and one hour and 30 minutes.

13. My laptop contains a substantial volume of private and highly sensitive documents and communications relating to Optimum business and our clients. Among them are a substantial volume of privileged communications with counsel and materials relating to legal matters that I understand are attorney work-product.

14. My cellphone likewise contains a substantial volume of private and highly sensitive documents and communications relating to Optimum business and our clients, including privileged communications with counsel and attorney work-product. My cellphone also contains substantial amounts of my own personal, private information, including information regarding my family and children, photographs, medical information, personal financial information and electronic credit cards, personal contact information, passwords to financial and other sensitive accounts, and more.

15. My attorney did not receive the return of my cellphone until October 17, 2023, 10 days after Special Agent Wilbert seized it. To date, my laptop still has not been returned to me. Nor have copies of the data contained in either my cellphone or laptop been returned

to me.  Despite repeated requests by me and my attorney, I also have not received any explanation for the detention of my devices.

16. Because this Declaration is submitted for a limited purpose, it does not include every fact I know about this matter.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed:   Dubai, UAE
            October 30, 2023

_____
Alberto Matta