UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALBERTO MATTA,

                    Movant,

    - against -

UNITED STATES OF AMERICA and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

                    Respondents.

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR RETURN OF SEIZED PROPERTY PURSUANT TO FED. R. CRIM. P. 41(g)**

Dated: October 30, 2023
      New York, New York

MORVILLO, ABRAMOWITZ
GRAND, IASON & ANELLO, P.C.
Richard F. Albert
Jordan L. Weatherwax
New York, NY 10017
(212) 856-9600

*Attorneys for Movant Mr. Alberto Matta*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND .......................................................................................................................... 1
ARGUMENT ................................................................................................................................ 4
   I.    The Seizure, Detention, and Any Searches of Mr. Matta's Electronic Devices Violate his Fourth Amendment Rights ...................................................................................... 4
       a.   The Ongoing Border Search Is Non-Routine ...................................................... 6
       b.   The Government Has Not Articulated Any Valid Legal Basis to Seize and Search the Electronic Devices, and None Exists ....................................................................... 7
CONCLUSION ............................................................................................................................. 8


# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*Awan v. United States,*
   2014 WL 1343129 (E.D.N.Y. Mar. 1, 2014) .................................................................. 3

*Katz v. United States,*
   389 U.S. 347 (1967) ....................................................................................................... 4

*Navarette v. California,*
   134 S. Ct. 1683 (2014) ................................................................................................... 6

*Riley v. California,*
   573 U.S. 373 (2014) ....................................................................................................... 4

*United States v. Aigbekaen,*
   943 F.3d 713 (4th Cir. 2019) ...................................................................................... 5, 9

*United States v. Cano,*
   934 F.3d 1002 (9th Cir. 2019) ........................................................................................ 5

*United States v. Cotterman,*
   709 F.3d 952 (9th Cir. 2013) .......................................................................................... 5

*United States v. Irving,*
   452 F.3d 110 (2d Cir. 2006) ........................................................................................... 5

*United States v. Kamaldross,*
   2022 WL 1200776 (E.D.N.Y. Apr. 22, 2022) ................................................................ 5

*United States v. Levy,*
   803 F.3d 120 (2d Cir. 2015) ........................................................................................... 6

*United States v. Montoya de Hernandez,*
   473 U.S. 531 (1985) ................................................................................................... 4, 5

*United States v. Perea,*
   986 F.2d 633 (2d Cir. 1993) ........................................................................................... 6

*United States v. Ramsey,*
   431 U.S. 606 (1977) ....................................................................................................... 4

**Statutes**

U.S. Const. amend. IV .......................................................................................................... 4

**Rules**

FED. R. CRIM. P. 41(g) .................................................................................................... 1, 3

## PRELIMINARY STATEMENT

October 7, 2023, U.S. officials at John F. Kennedy International Airport seized the cellphone and laptop of Mr. Alberto Matta, a 55-year-old Italian citizen and senior executive of a European fund manager with offices in the United States, who was traveling on an ordinary business trip. Despite his repeated requests at the time, and despite repeated written inquiries by counsel since then, the government has provided no further information regarding why it seized Mr. Matta's devices; whether it has already searched, or intends to search, their contents; and what legal basis it claims for doing so. Mr. Matta is not known to be the subject of any government investigation or prosecution in the United States or elsewhere. The cellphone and laptop contain highly sensitive and private information important to Mr. Matta's business, including a substantial volume of material subject to the attorney-client privilege and work-product doctrine.

We respectfully submit this Memorandum of Law in support of Mr. Matta's application, pursuant to Fed. R. Crim. P. 41(g), to direct the United States to show cause why his electronic devices and all copies of the data they contain should not be returned to him.

## BACKGROUND

On October 7, 2023, Mr. Matta traveled from Madrid, Spain to New York. (*See* Declaration of Alberto Matta, executed October 30, 2023 ("Matta Decl.") ¶ 4.) An Italian citizen, Mr. Matta is the founder, Chairman and majority shareholder of Optimum Asset Management, S.A. ("Optimum"), a real estate private equity firm that invests in projects in the United States and Europe. (Matta Decl. ¶ 2.) He has more than 28 years of experience in finance and has been employed by major financial institutions in the United States, the United

Kingdom, and elsewhere in Europe. (*Id.*) Mr. Matta has never had any interaction with the criminal justice system in any country during his professional career. (Matt Decl. ¶ 3.)

Upon his arrival at John F. Kennedy International Airport, a United States Customs and Border Protection ("CBP") agent called Mr. Matta aside into a secondary examination area for additional questioning. (Matta Decl ¶ 5.) Mr. Matta was detained there for approximately one-and-one-half hours. (Matta Decl. ¶ 12.) CBP agents subjected Mr. Matta to a series of questions regarding his background and his travel, to which Mr. Matta responded. (Matta Decl. ¶ 6.) Despite Mr. Matta's repeated requests, the CBP agents never explained why he was being detained for questioning. (Matta Decl. ¶ 7.) Then, a CBP agent asked Mr. Matta to present the electronic devices he was carrying, a Samsung Galaxy cellphone, and a Microsoft laptop (the "electronic devices"), and when he did so, the agent inspected and photographed the devices. (Matta Decl. ¶ 8.)

A CBP agent thereafter demanded that Mr. Matta provide the password for the cellphone. (Matta Decl. ¶ 9.) Mr. Matta, concerned about revealing his clients' and his own firm's private financial information, along with privileged information regarding legal matters, declined and then said that he would like to speak to a lawyer. (*Id.*) Mr. Matta later opened his cellphone at the agent's request and handed it over to allow the agent to review its contents and record its International Mobile Equipment Identity ("IMEI") number. (Matta Decl. ¶ 10.) Thereafter, Homeland Security Investigations ("HSI") Special Agent Thomas Wilbert entered the room and advised Mr. Matta that his electronic devices would be detained. (Matta Decl. ¶ 11.) In response to Mr. Matta's requests, SA Wilbert responded that he could not provide any information regarding why the government was seizing the electronic devices. (*Id.*) SA Wilbert gave Mr. Matta a receipt and told him that he was free to leave. (Matta Decl. ¶ 11 & Exh. A.)

2

On October 13, 2023, counsel for Mr. Matta contacted SA Wilbert by email to inquire regarding the electronic devices and requested a phone call. (*See* Declaration of Richard F. Albert, Executed October 30, 2023 ("Albert Decl.") ¶ 5(a) & Exh. A.) The same day, SA Wilbert responded that Mr. Matta would receive his cellphone on October 16, 2023, but that the laptop would remain in detention. (Albert Decl. ¶ 5(b) & Exh. A.) SA Wilbert did not make himself available for a phone call, nor did SA Wilbert advise when he would be available for a phone call. (Albert Decl. ¶ 5(b) & Exh. A.) Counsel responded to SA Wilbert reiterating his request for a phone call, but SA Wilbert did not respond. (Albert Decl. ¶ 5(c) & Exh. A.)

Counsel received Mr. Matta's cellphone on October 17, 2023, and that same day, sent SA Wilbert a letter regarding Mr. Matta's questions and concerns regarding the seizure of the electronic devices. (Albert Decl ¶¶ 6,7 & Exh. B.) Among other things, counsel requested that SA Wilbert advise whether any data contained in the electronic devices had been copied, whether such data had been searched, and the legal basis for the seizure and searches. (Albert Decl. Exh. B.) Counsel also notified SA Wilbert that the electronic devices contain sensitive business information, including extensive communications and other information protected by attorney-client privilege and work-product doctrine. (Albert Decl. Exh. B.)

After making unsuccessful inquiries with senior staff at the United States Attorney's Office for the Eastern District of New York and having received no response from SA Wilbert, on October 23, 2023, counsel emailed a letter to SA Wilbert's supervisors at HSI, Katrina Berger, Executive Associate Director of HSI, and Ivan Arvelo, Special Agent-in-Charge of the New York Field Office of HSI. (Albert Decl. ¶ 8, 9 & Exh. C.) The letter reiterated the questions and concerns raised in counsel's October 17 letter and the request for a phone call.

3

To date, no one from HSI or elsewhere in the Department of Homeland Security have responded to counsel's requests for a conversation regarding the search and seizure, nor have they advised whether any data contained in the electronic devices has been copied, whether any such data had been searched, and the legal basis for the seizure and searches, nor have they advised that they are taking steps to respect information subject to the attorney-client privilege or work-product doctrine. Although counsel has received the return of Mr. Matta's cellphone, the government has not returned Mr. Matta's laptop.

## ARGUMENT

The Court should direct the government to return the electronic devices, and any copies of data contained therein or derived therefrom, to Mr. Matta because the seizure and any subsequent searches were in violation of his Fourth Amendment rights. Rule 41(g) of the Federal Rules of Criminal Procedure provides that non-contraband property must be returned to its rightful possessor when it has been seized illegally. *Awan v. United States*, No. 12-CV-3844, 2014 WL 1343129, at *3 (E.D.N.Y. Mar. 1, 2014).

### I. The Seizure, Detention, and Any Searches of Mr. Matta's Electronic Devices Violate his Fourth Amendment Rights

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). As relevant here, a narrow exception to the Fourth Amendment's prohibition against warrantless searches permits customs officials to conduct suspicionless "routine" searches at the international border. *See United States v. Montoya de Hernandez*, 473 U.S. 531,

538 (1985). This exception is based largely on the government's interest in detecting contraband crossing its borders. *See, e.g., id.* at 537; *United States v. Ramsey*, 431 U.S. 606, 619 (1977).

In its 2014 watershed decision in *Riley v. California*, 573 U.S. 373, 395 (2014), holding that authorities must obtain a warrant to search a cellphone incident to arrest, the Supreme Court recognized the particularly strong privacy interest individuals have in modern electronic devices, which are "a digital record of nearly aspect of their lives—from the mundane to the intimate." *Id.* at 395. Therefore, "[a]llowing the police to scrutinize such records on a routine basis is quite different from allowing them to search a personal item or two in the occasional case." *Id.* Simply put, because of the vast quantity and wide-ranging nature of the data contained in modern electronic devices, the Supreme Court has recognized that they are different in kind from the types of readily portable items that have historically been the subject of Fourth Amendment search and seizure decisions relating to the border or elsewhere.

Although neither the Supreme Court nor the Second Circuit has defined the permissible scope of a warrantless search of a cellphone or laptop computer at the border, since *Riley*, the Ninth Circuit has held that such searches must be limited to determine "whether the phone contains contraband." *United States v. Cano*, 934 F.3d 1002, 1018 (9th Cir. 2019) (vacating conviction and finding that evidence from cellphone should be suppressed).

Even pre-*Riley* Supreme Court and Second Circuit caselaw allowing warrantless border searches that did not entail electronic devices recognizes that searches and seizures "beyond the scope of a routine customs search and inspection" require at least reasonable suspicion of criminal activity. *See Montoya de Hernandez*, 473 U.S. at 541; *see also United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) (observing that at the border, "more invasive searches, like strip searches, require reasonable suspicion"). Under this standard, courts have widely

5

recognized that forensic searches of the contents of electronic devices are nonroutine. *See Cano*, 934 F.3d at 1016 (holding that a forensic search of a cellphone, like a forensic search of a laptop, was non-routine, and observing that such "digital devices 'contain the most intimate details of our lives' and 'the uniquely sensitive nature of data on electronic devices carries with it a significant expectation of privacy" (quoting *United States v. Cotterman*, 709 F.3d 952, 965–66 (9th Cir. 2013)); *United States v. Aigbekaen*, 943 F.3d 713, 720–21 (4th Cir. 2019) (holding that a forensic search of an electronic device was "nonroutine" and instructing that the government "may not invoke the border exception on behalf of its generalized interest in law enforcement and combatting crime" (quotations and citations omitted)); *see also United States v. Kamaldross*, No. 19-CR-543, 2022 WL 1200776, at *11 (E.D.N.Y. Apr. 22, 2022) (addressing border search of cellphone and laptop: "In light of the unparalleled breadth of private information that can be revealed by a comprehensive forensic analysis . . ., there seems to be good reason to consider forensic searches nonroutine and thus demanding of reasonable suspicion" (quotation marks and citation omitted)).

### a. The Ongoing Border Search Is Non-Routine

As described above, SA Wilbert seized Mr. Matta's cellphone and laptop on October 7, 2023. The government did not return his physical cellphone to him until October 17, and as of the date hereof, it still has not returned Mr. Matta's laptop. The government has not returned the contents of either device.

The only reasonable explanation for the government's seizure and lengthy detention of the devices is that it has forensically copied, or is in the process of forensically copying, their contents and reviewing same. Indeed, despite repeated inquiries, the government has not disclaimed that it has already, or that it intends to, search the contents of the devices. The

6

government's prolonged detention of the devices for the obvious purpose of creating and searching forensic copies renders the border search nonroutine.

### b. The Government Has Not Articulated Any Valid Legal Basis to Seize and Search the Electronic Devices, and None Exists

Despite repeated requests, the government has not articulated, and indeed it cannot articulate, any valid legal basis to detain and search Mr. Matta's electronic devices.

The government has not claimed to have obtained any search warrant, nor has it provided any copy thereof. Further, the government has not articulated any basis to reasonably suspect that Mr. Matta was engaged in criminal activity justifying the detention and search of the devices. It is the government's burden to establish reasonable suspicion when it makes such a claim in support of a search and seizure. *See United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993). At the border, reasonable suspicion requires "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Levy*, 803 F.3d 120, 123 (2d Cir. 2015) (quoting *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)).

Despite repeated requests, the government has repeatedly failed to provide any basis for suspecting Mr. Matta of engaging in criminal activity, much less a "particularized and objective" basis. Nor could it do so based on the facts of Mr. Matta's role as senior executive of a well-established international fund manager, his travel, or his responses to the routine questions asked of him during the course of his interactions with law enforcement officers. It is telling that despite SA Wilbert being in communication with Mr. Matta's counsel, neither SA Wilbert nor his supervisors at HSI have provided any rationale for their conduct, nor (other than advising when SA Wilbert would return the cellphone) have they made any response to Mr. Matta's counsel's requests for information or a conversation.

## CONCLUSION

Accordingly, because no valid legal basis exists supporting the nonroutine seizure, detention, and search of Mr. Matta's electronic devices, the search and seizure is in violation of the Fourth Amendment, and pursuant to Rule 41(g), the Court should direct the government to return them, along with all copies of the data they contain, and to identify all searches and reviews conducted of those devices.

Dated: October 30, 2023
      New York, New York

                           MORVILLO, ABRAMOWITZ
                          GRAND, IASON & ANELLO, P.C.

                         By: _____
                            Richard F. Albert
                            Jordan L. Weatherwax
                            565 Fifth Avenue
                            New York, NY 10017
                            (212) 856-9600

                            *Attorneys for Movant Mr. Alberto Matta*